## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## DUBLIN DIVISION

PHILIP KEEN, JR., and all other   )
persons similarly situated,       )
                            )
         PLAINTIFFS,    )
                            )    CIVIL ACTION FILE
Vs.                         )    NO. _____
                            )
JUDICIAL ALTERNATIVES OF    )
GEORGIA, INC.,             )
                            )
         DEFENDANT.    )

## <u>COMPLAINT – CLASS ACTION</u>

NOW COMES the named Plaintiff, PHILIP KEEN, JR., on behalf of himself and all other persons similarly situated, and brings this his complaint against Judicial Alternatives of Georgia, Inc. and in support thereof shows:

1.     Certificate of Interested Parties:  The Plaintiff's attorney certifies that the following is a complete list of all parties, officers, directors or trustees of parties, and all other persons, associates of persons, firms, partnerships, subsidiary or parent corporation or organization which have a financial interest in or other interest which could be substantially affected by the outcome of this case.

(a)     Philip Keen, Jr. and any other individual in Georgia who has, since April, 2011, paid any fees to Judicial Alternatives of Georgia, Inc. arising out of any contract for private probation services entered into pursuant to O.C.G.A. §42-8-100(g).

(b)     Judicial Alternatives of Georgia, Inc.

(c)     The following is a list of co-owners and officers of Judicial Alternatives of Georgia, Inc.:

> Kenneth Kight
> 211 N. Franklin Street
> Dublin, GA 31021
>
> Timothy Donovan
> 930 Second Avenue
> Columbus, GA 31901
>
> Jeffrey C. Taylor
> 418 Flint Avenue
> Albany, GA 31701

(d)     The lawyers whose names and addresses are on this pleading.

2.      This action seeks adjudication of issues of federal law arising out of the Fifth and Fourteenth Amendments of the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1332. Venue is proper in the United States District Court for the Southern District of Georgia under 28 U.S.C. § 1391 in that the facts giving rise to the claim of the named Plaintiff arose within the United States District Court for the Southern District of Georgia, Dublin Division.

3.      The Defendant is a Georgia corporation doing business in the State of Georgia and elsewhere. It has as its principal place of business an office located at 211 North Franklin Street, Dublin, Georgia, and is subject to the jurisdiction of this Court.

4.      The claims of the members of the proposed class, in the aggregate, exceed the sum of $5 million, exclusive of interests and costs.

5.      The Defendant serves as a private probation company for a number of courts in Georgia that handle misdemeanors and traffic offenses and has offices in at least 26 locations in Georgia, as well as an office located in Monticello, Florida. The locations of these

2

offices include:  418 Flynn Avenue, Albany, Georgia; 27B Market St., Barnesville, Georgia; 401 Main Street, Byron Georgia; 124 North Broad Street, Cairo, Georgia; 84 East Oakland Street, Camilla, Georgia; 930 2nd Avenue, Columbus, Georgia; 105 14th Avenue, East, Cordele, Georgia; 3236 Highway 278, N.E, Suite C, Covington, Georgia; 211 N. Franklin Street, Dublin, Georgia; 824 Oak Street, Suite 2, Eatonton, Georgia; 224 East Pine St., Fitzgerald, Georgia; 1141 Siloam Road, Greensboro, Georgia; 232 Meriwether St., Griffin, Georgia; 730-B E. Third Street, Jackson, Georgia; 119A West Washington St., Monticello, Georgia; 120 N. Essa Street, Lake Park, Georgia; Lyons Police Department, Lyons, Georgia; 355 Hancock Street, Madison, Georgia; 2 West Broad Street, Metter, Georgia; 185A Roberson Mill Road, Milledgeville, Georgia; 1122 Ball Street, Perry, Georgia; 308 South Lee Street, Quitman, Georgia; 1830 Martin Luther King Jr. Drive, Soperton, Georgia; 930 2nd Avenue, Columbus, Georgia; 107 N. 6th Street, Griffin, Georgia; 4602 North Henry Blvd., Stockbridge, Georgia; 119 Maple Street, Sylvania, Georgia  30467; Twin City Police Department, Twin City, Georgia; and 211 N. Franklin Street, Dublin, Georgia.

6.     The facts that give rise to the claims of the named Plaintiff in this case occurred in the Dublin Division of this Court.

7.     The Defendant has been operating as a private probation company for the State Court of Treutlen County, Georgia, by virtue of a purported contract dated March 16, 2008, a copy of which is attached hereto as Exhibit "A."

8.     Exhibit "A" was approved by the then-governing authority of Treutlen County, Georgia in 2008.  The governing authority of Treutlen County changed subsequent to 2008 when new commissioners took office in 2009, as shown by Exhibit "B" attached hereto that sets forth the names of the commissioners in 2011.

3

9.     The contract entered into and approved by the governing authority in 2008 had a term of one (1) year and expired on March 15, 2009, as shown by Exhibit "A," page 7.

10.     The new Treutlen County governing authority that took office in January of 2009 did not approve any subsequent contract entered into between Defendant and the State Court of Treutlen County.

11.     A local governing authority cannot bind its successors so as to prevent free legislation. *See*, O.C.G.A. § 36-30-3(a); *Wilson v. Southland*, 258 Ga. 479, 371 S.E.2d 382 (1988); *McElmurray v. Richmond Co.*, 223 Ga. 47, 153 S.E.2d 427 (1967).

12.     Exhibit "B" shows the changes in the governing authority from 2008 to 2011 and the present.

13.     The approval of a private probation contract is a legislative function of the county commission. The law prohibits a local governing authority from binding successors so as to prevent free legislation. *Wilson v. Southerland*, 258 Ga. 479, 371 S.E. 2d 382 (1988).

14.     Defendant, by not having its contract approved by successive governing authorities as elected in Treutlen County, was not lawfully acting as a private probation company under O.C.G.A. § 42-8-100(g) on January 27, 2012.

15.     The named Plaintiff entered a plea of "guilty" to driving under the influence of alcohol in the State Court of Treutlen County, Georgia, and was sentenced on January 27, 2012, as shown by Exhibit "C" attached hereto.

16.     On the date of his conviction, the named Plaintiff paid to the Defendant the sum of $1,395.00 in payment of fines, surcharges, and probation fees.

17.     The portion of the $1,395.00 that was retained by the Defendant consisted of more than one (1) and as many as eight (8) monthly probation fees of $40, that the Defendant

4

was not entitled to collect and retain because it did not then have a valid contract to collect fees from probationers for probation services.

18.     Exhibit "A" attached hereto was void at the time that Plaintiff was sentenced and has remained void because it had not been properly approved by the governing authority of Treutlen County during Calendar Year 2011, nor thereafter.

19.     Defendant has entered into similar contracts with other courts in other counties and locations that provide for a 1-year term with an automatic renewal, but subsequent county commissions or governing authorities have not approved the renewals of the contracts.

20.     Attached hereto as Exhibit "D" is a copy of the contract that the Defendant entered into with the State Court of Baldwin County in 2005. Other contracts have been entered into by the Defendant with other courts throughout the State of Georgia, that have automatic renewal provisions that have not been approved by the current governing authorities.

21.     Defendant does business throughout Georgia and uses generally the same form of contract with each court that provides for automatic renewal.

22.     The probation services contracts that Defendant has entered into that contain provisions stating that the contract will be automatically renewed does not abrogate the necessity of approval of the contract by each successive commission or council. The absence of subsequent re-approval renders the contracts void, and the contracts cease to be valid contracts to provide and charge for probation services pursuant to O.C.G.A. § 42-8-100(g).

23.     Defendant purports to provide probation supervision pursuant to a contract authorized by O.C.G.A. § 42-8-100 through 108, hereinafter, The Statute.

24.     The Statute contains no language that permits or prohibits the cost of probation services being imposed solely upon probationers.

5

25.     The Statute does not authorize private probation companies to charge and collect a set fee for services, nor does The Statute authorize courts to set fees by contract, traditionally a legislative function.   The Statute is devoid of any limit on what a private, for-profit company can charge probationers.

26.     The Statute neither permits nor prohibits a private, for-profit probation services company from having a direct financial interest in how long a probationer remains subject to supervised probation.

27.     Neither The Statute nor the form contracts used by the Defendant direct the Defendant to assess and report to the Court a factual determination of the financial ability of a probationer to pay court-imposed fines, costs and probation supervision fees.

28.     Neither The Statute nor the form contracts used by Defendant contain adequate provisions and procedures to prevent incarceration of probationers on account of their indigency or to prevent the imprisonment of citizens because of failure to pay a debt owed to a private, for-profit corporation..

29.     O.C.G.A. § 42-8-100 through 108 is facially unconstitutional in violation of the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution.

30.     O.C.G.A. § 42-8-100 through 108, as applied in the form contracts of the Defendant, is applied in an unconstitutional manner in violation of the due process clauses of the Fifth and Fourteenth Amendments of the United States Constitution.

31.     O.C.G.A. § 42-8-100 through 108, as applied in the form contracts of the Defendant, is applied in an unconstitutional manner in violation of the due process clause and the prohibition of imprisonment for debt of the Constitution of the State of Georgia.

32.     Under the doctrine of separation of powers drawn from the Constitution of the State of Georgia, the establishment of standard fees that may be imposed as part of a sentence for violation of misdemeanors is a legislative function within the exclusive domain of the legislative branch of the State of Georgia.  It is a violation of the Constitution of the State of Georgia for a private for-profit company to establish fees or other punishments that a court may impose for violation of a misdemeanor by making a contract with a judicial officer.

### Class Action Allegations

33.     Plaintiff brings this action on behalf of a class, hereafter, The Class, a subclass, hereinafter, The Subclass, that includes:

#### The Class

All persons who, in Georgia, have paid fees denominated as probation supervision fees to Judicial Alternatives of Georgia, Inc. since April 1, 2011.

#### The Subclass

All members of The Class who have paid fees denominated as probation supervision fees to Judicial Alternatives of Georgia, Inc. at a time when Judicial Alternatives of Georgia, Inc. did not then have a probation services contract that had been approved by the then-governing authority of the county or municipality where the sentencing court was located.

34.     The Class and The Subclass each include far more than forty persons and are so numerous that joinder of all members of The Class or of the Subclass would be impractical.

35.     There are questions of law and fact common to The Class and to The Subclass, including the central, common and controlling issues of law as to the constitutionality of O.C.G.A. § 42-8-100 through 108, as written and as applied, as to the validity of probation supervision fees set by a contract with a private, for-profit corporation rather than by the legislature, and as to the continuing validity of the approvals of contracts providing for probation

7

services provided by private, for-profit corporations that are compensated solely by fees extracted from probationers. These common issues of law and fact predominate over any individual issues.

36. The claims of the Plaintiff are typical of the claims being asserted on behalf of The Class and The Subclass. It is anticipated that the Defendant will assert defenses that will raise issues of both law and fact that will be common to The Class and common to The Subclass.

37. Defendant has acted in a manner common to The Class and The Subclass by collecting fees under contracts that have not been properly approved or re-approved and are, therefore, void. Declaratory and final injunctive relief as to The Class as a whole, as well as to the Subclass, will be appropriate.

38. The Plaintiff and his attorneys will fairly and adequately represent the interests of the members of The Class and The Subclass.

39. The proposed Class and Subclass are manageable.

40. A class action is the superior procedure for resolution of the claims asserted in this action.

41. Prosecution of separate actions by individual members of The Class and The Subclass will create the risk of inconsistent or varying adjudications with respect to individual members of The Class and Subclass that would establish inconsistent standards of conduct for the Defendant. Such adjudications could, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and would substantially impair and impede their ability to protect their interests.

## Cause of Action for a Declaratory Judgment

### Count I

42.     Paragraphs two through forty-one are realleged and incorporated into Count I.

43.     Plaintiff seeks declaratory relief as provided by 28 U.S.C. § 2201.

44.     Plaintiff is unaware of other pending litigation to which Defendant is a party that raises the issues raised in this Complaint.

45.     The allegations of the Complaint raise an actual controversy as to the constitutionality of O.C.G.A. § 42-8-100 through 108, as written and as applied, and as to the validity of the probation service contracts under which Defendant has collected and continues to collect from Plaintiff and members of The Class and the Subclass fees that it labels as probation supervision fees.

46.     The allegations of this Complaint raise an actual controversy as to the lawfulness of Defendant's collection of fees that it labels as probation supervision fees from Plaintiff and members of The Class and The Subclass.

47.     The allegations of the Complaint raise issues as to whether Defendant can continue to collect and retain fees that it labels as probation supervision fees from Plaintiff and members of The Class and The Subclass.

48.     The parties are each in need of declaratory relief as to constitutionality of O.C.G.A. §42-8-100 through 108, as written and as applied, as to the validity of the probation service contracts and as to the right of the Defendant to collect and retain fees that it labels as probation supervision fees.

49.    Plaintiff, individually and on behalf of The Class and The Subclass, prays for declaratory relief declaring that O.C.G.A. § 42-8-100 through 108 is unconstitutional as written in that it offends the due process clauses of the Fifth and Fourteenth Amendments of the United States Constitution.

50.    Plaintiff, individually and on behalf of The Class and The Subclass, prays for declaratory relief declaring that O.C.G.A. § 42-8-100 through 108 is unconstitutional as applied by Defendant in that it offends the due process clauses of the Fifth and Fourteenth Amendments of the United States Constitution.

51.    Plaintiff, individually and on behalf of The Class and The Subclass, prays for declaratory relief declaring that O.C.G.A. § 42-8-100 through 108 is unconstitutional as applied by Defendant in that it offends the due process clause and the prohibition of imprisonment for debt of the Constitution of the State of Georgia.

52.    Plaintiff, individually and on behalf of The Class and The Subclass, prays for declaratory relief declaring that the establishment of probation supervision fees that a court may impose as part of a sentence is a legislative act in the exclusive domain of the Georgia Legislature, and that it is a violation of the separation of powers doctrine drawn from the Georgia Constitution for a private, for-profit corporation to endeavor to establish the standard fees that a court may impose for probation services by making a contract with an officer of the judiciary.

53.    Plaintiff, individually and on behalf of The Class and The Subclass, prays for declaratory relief declaring that the Defendant's probation service contracts that have not been approved or re-approved by the respective current commissions or councils are void.

54.     Plaintiff, individually and on behalf of The Class and The Subclass, prays for declaratory relief declaring that the Defendant cannot collect or retain fees that it labels probation supervision fees that it lacked lawful authority to collect.

### Money Had and Received

### Count II

55.     Paragraphs two through forty-one are realleged and incorporated into Count II.

56.     Money paid to another unlawfully or under a void contract may be recovered in an action for money had and received.

57.     The Defendant collected fees from the Plaintiff and members of The Class and The Subclass that the Defendant labeled as probation supervision fees.

58.     The Defendant acted unlawfully and without valid contracts under which it could collect probation supervision fees at the times when it collected such fees from the Plaintiff and members of The Class and The Subclass.

59.     The Defendant unlawfully collected the fees that it collected from the Plaintiff and members of The Class and The Subclass that the Defendant labeled as probation supervision fees.

60.     The Plaintiff and members of The Class and The Subclass are entitled to recover from the Defendant all fees that the Defendant unlawfully collected from them.

60.     The Plaintiff and all members of The Class and The Subclass are entitled to recover prejudgment interest on all sums unlawfully collected from them by the Defendant.

WHEREFORE, Plaintiffs pray:

(a)     That Defendant be served with a copy of this complaint;

(b)     That the Court certify this action as a class action under Rule 23(b) (2) and (3), Fed.R.Civ.P.;

(c)     That the Court declare that O.C.G.A. § 42-8-100 through 108, as applied, is unconstitutional in violation of the Fifth and Fourteenth Amendments of the United States Constitution;

(d)     That the Court declare that O.C.G.A. § 42-8-100 through 108, as written and as applied, is unconstitutional in violation of the due process clause and the prohibition of imprisonment for debt of the Constitution of the State of Georgia;

(e)     That this Court declare that the Defendant cannot collect or retain fees that it labels as probation supervision fees pursuant to contracts that are void for lack of approval by the current commission or council.

(f)     That this Court declare that the setting of fees that a sentencing court may impose as part of a sentence is a legislative act within the domain of the Georgia Legislature and that such fees cannot be legislated by a contract made by a private, for-profit corporation with a judicial official.

(g)     That the Plaintiff and all members of The Class and The Subclass recover from the Defendant all fees that the Defendant unlawfully collected from them.

(h)     That the Plaintiff and all members of The Class and The Subclass recover from the Defendant prejudgment interest on all sums unlawfully collected from them by the Defendant.

(i)     That the Court restrain and enjoin the Defendant from continuing to collect fees for probation services in Georgia; and

(j)      That the Court grant such other and further relief as is just and

equitable.

This _28th_ day of March, 2015.

_s/ C. Mitchell Warnock, Jr._
C. MITCHELL WARNOCK, JR.
Georgia State Bar No. 738102

WARNOCK & MACKEY, LLC
1104 Bellevue Ave.
Dublin, GA 31021
(478) 275-8119
warnocklaw@bellsouth.net

_s/ John B. Long_
JOHN B. LONG
Georgia State Bar No. 457200
THOMAS W. TUCKER
Georgia State Bar. No. 717975

TUCKER LONG, P.C.
P. O. Box 2426
Augusta, GA 30903
(706) 722-0771
jlong@tuckerlong.com
ttucker@tuckerlong.com

_s/ John C. Bell, Jr._
JOHN C. BELL, JR.
Georgia State Bar No. 048600

BELL & BRIGHAM
457 Greene Street
Augusta, GA 30901
(706) 722-2014
john@bellbrigham.com

_s/ John R.B. Long_
JOHN R. B. LONG
Georgia State Bar No. 516133

JOHN R. B. LONG, P.C.
411 Telfair Street
Augusta, GA 30901
(706) 868-8011
jlongattorney@aol.com

13

## *JUDICIAL ALTERNATIVES OF GEORGIA, INC.*
### PROBATION SERVICES AGREEMENT

Agreement :   Treutlen County State Court and J.A.G.

---

**THIS AGREEMENT** (this "Agreement") is entered into this ___16th___ day of __MARCH__ 2008, by and between **Judicial Alternatives of Georgia, Inc.**, a Georgia corporation with its principal place of business at 211North Franklin Street Dublin, Georgia ("**JAG**") and the **State Court of Treutlen County, Georgia** ("the Court"), and is to be approved by the Treutlen County Commissioners, State of Georgia, and is effective __MARCH 16,___ , 2008

**WHEREAS,** the Court has determined that a present need exists for certain probation services;

**WHEREAS,** the Court is authorized to enter into this Agreement by Official Code of Georgia Annotated, Sections 42-8-100 through 42-8-108, and by other laws and regulations to which the Court is subject;

**WHEREAS,** JAG is qualified and experienced in providing comprehensive professional services regarding probation supervision, fine collections, counseling, and other probation services for persons convicted of certain misdemeanors;

**WHEREAS,** JAG is registered as a private provider of probation services with the County and Municipal Probation Advisory Council, as required by Official Code of Georgia Annotated, Section 42-8-107(a)(1);

**WHEREAS,** JAG is willing to provide such services to the Court in compliance with Georgia law, and in compliance with all standards and qualifications of the County and Municipal Probation Advisory Council; and

**WHEREAS,** the Court and JAG agree that the terms and conditions of this Agreement apply to the services to be provided hereunder;

**NOW, THEREFORE,** in consideration of the mutual covenants herein contained, the parties agree as follows:



EXHIBIT

A

1.  **RESPONSIBILITIES OF JAG.**

In consideration of the obligations of the Court and/or Governing Authority, **JAG** shall provide the following services.

A.  **Compliance with Statutes and Rules.** **JAG** shall comply with Article 6 of Title 42 Chapter 8 of the Official Code of Georgia and all standards, rules and regulations promulgated by the County and Municipal Probation Advisory Council.

B.  **Records and confidentiality.** **JAG** shall create and maintain individual files for each offender receiving services from **JAG** in accordance with this Agreement. **JAG** shall maintain the confidentiality of all files, records and papers relative to supervision of probationers under this Agreement. These records, files and papers shall be available only to the judge of the court handling the case, the Department of Audits and Accounts, the County and Municipal Probation Advisory Council and upon transfer of probation supervision to the State, to the Georgia Department of Corrections.

C.  **Financial Records.** **JAG** shall maintain financial records according to generally accepted accounting practices.

D.  **Officer Qualifications and Training.** **JAG** shall employ competent and able personnel to provide the services to be rendered hereunder and to appropriately administer the caseload. All probation officers shall be at least twenty-one (21) years of age and have the educational qualifications as required by Official Code of Georgia Annotated, Section 42-8-102. All probation officers shall also comply with the orientation and continuing education training required per annum under the same Code Section. No person who has been convicted of a felony will be employed by **JAG** as a probation officer.

E.  **Criminal History Check.** **JAG** shall have a criminal history records check made of all probation officers, as well as all of its owners, operators, directors, agents, or employees who provide services to offenders, who have access to its records, who have face-to-face contact with offenders under supervision, or who have access to offender data, and certify the results to the County and Municipal Probation Advisory Council.

F.  **Frequency of Contacts/Officer per Probationer Ratio.**  JAG shall manage caseload limits so as not to exceed 250 probationers per probation officer for low level supervision, 200 probationers per probation officer for standard level supervision, and 150 probationers per probation officer for maximum/high level supervision. Low level supervision includes probationers required to have one face-to-face contact per month with a probation officer, but will be required to make weekly or bi-monthly payments to an accounting clerk. Standard level supervision includes probationers required to have face-to-face contact bi-monthly with a probation officer, and could be required to make weekly payments to an accounting clerk. Maximum/high level supervision includes those probationers who are required to have face-to-face contact with a probation officer on a weekly basis, and required to submit to random drug screens.

G.  **Location.** JAG shall maintain an office in **Soperton, Georgia** for meeting with and the provision of services to probationers.

2.  **SCOPE OF SERVICES BY JAG TO PROBATIONERS.**

JAG shall provide the following services, as appropriate to each case, to probationers referred by the Court.

A.  **Court Attendance and Probationer Case History.**  During all court sessions, JAG shall have a probation officer attend and interview each offender to complete a case and personal history and to provide orientation and instruction regarding compliance with the Court's ordered conditions of probation.  At orientation, the probation officer shall provide a list of all service fees to the probationer.

B.  **Supervision.**  JAG shall monitor and supervise probationers to ensure compliance with the Court's order of probation.  JAG shall make a supervision assessment of the offender and determine the probationer's reporting schedule.  Offenders determined by the court to be indigent shall be supervised at no cost to the probationer or the Court or Governing Body.

C.  **Restitution/Fine/Fee Collection.**  JAG shall collect restitution, fines, court costs and fees, program fees, and probation fees as ordered by the Court.  JAG shall provide an itemized bill prepared in accordance with accepted accounting practices for each month for each probationer.

D.  **Community Service.**  JAG shall coordinate, monitor, and ensure compliance with community service by each probationer as ordered by the Court.  JAG will maintain records of service participation.

E.   **Employment Assistance.**   JAG shall prepare referrals and lend reasonable assistance to probationers either to the extent ordered by the Court or to the extent available for probationers desiring employment assistance or counseling.

F.   **Drug/Alcohol Screening.** JAG shall coordinate with local authorities and facilities, for evaluation and assessment of probationers for drug/alcohol rehabilitation, mental health or psychological counseling, or educational programs mandated by the Court and shall require probationers' compliance. JAG shall conduct drug and alcohol screens as determined necessary by the Court. Probationers shall be responsible for the costs of all drug or alcohol screens and testing.

G.   **Cognitive Based Programs.**   JAG shall provide the following intervention, rehabilitation or educational programs: Domestic Violence, Anger Management, Responsible Behavior, Financial Management, Parenting, Job Preparedness. JAG may charge probationers for these programs in accordance with the Fee Schedule attached hereto as Exhibit "A," and incorporated by reference herein. A copy of Exhibit "A" shall be provided to probationers at orientation or at a time as soon as possible following the Court's order of attendance.

H.   **Electronic Monitoring.** JAG, when so ordered, shall provide and operate a system of electronic monitoring. JAG may charge probationers for monitoring in accordance with the Fee Schedule attached hereto as Exhibit "A," and incorporated by reference herein.

I.   **Reports of Probation Violations.** JAG shall recommend revocation of probation whenever the probationer has failed to substantially comply with the terms and conditions of probation. The Court shall provide JAG with direction of what constitutes a substantial failure to comply with probation terms and conditions. JAG shall prepare probation violation warrants and orders for submission to the Court. JAG shall have probation officers available to testify at probation revocation hearings, sentencing hearings and such other hearings as deemed reasonable and necessary by the Court. Minor violations of probation although not cause for revocation shall be included in the regular reports made to the Court under this Agreement. This Court shall provide JAG direction as to what curative measures should be taken in the case of minor violations.

3.     REPORTS TO COURT.

**JAG** shall provide written reports monthly to the Court listing the services rendered and provide such other reports as may be requested by the Court during the period of this Agreement which may include but are not limited to statistical reports, caseload data, and other records documenting the identity of the probationer, the status of each probationer's case, the services provided, and the monies collected.  Monthly reports will be delivered to the Court on or before the **10** (th) day of the following month.  **JAG** shall provide personal history, employment data, and location information to Court and law enforcement as necessary in tracking probation violators.

4.     TENDER OF COLLECTIONS.

**JAG** shall tender to the Clerk of the Court a report of collections and all fines, fees, and costs collected during the month from probationers by 10(th) day of the following month. Restitution shall be paid to the victim by the 10(th) day of the month following collection unless the Court orders payment to the clerk of court, and then it shall be paid as such other collections are paid to the Clerk.  In the event **JAG** cannot locate the victim, payment shall be made to the Clerk of Court.  **JAG** shall credit payments of funds in the following order of priority:   1) funds paid by the probationer for drug and alcohol screening test fees, 2) restitution, 3) fines, 4) court costs and surcharges, 5) program costs, and 6) probation fees.  **JAG** shall not retain or profit from any fines, restitution, fees or cost collected from probationers except the probation fee authorized by this Agreement.

5.     ACCESS TO JAG RECORDS.

Upon thirty (30) business days written notice **JAG** shall provide to the Court access to all books, records, correspondence, receipts, vouchers,     memoranda, and financial information (excluding computer software) pertaining to the services rendered under this Agreement for any purpose including but not limited to a conducting or reviewing a complete fiscal or program audit for any fiscal or calendar year.  Additionally, records shall be available for inspection in accordance with Official Code of Georgia Annotated, Section 42-8-103(b).

6.     FISCAL AUDIT.

**JAG** shall employ an independent auditor to annually audit its records and books pertaining to the services rendered to the court.  A written copy of this audit shall be provided to the Court and Governing Authority within three (3) months of the close of the year audited.

7.    **GOOD BUSINESS PRACTICES.**

**JAG** shall not engage in any other employment, business or activity that interferes or conflicts with the duties and responsibilities under this Agreement and shall not allow its employees to do so.  Furthermore, neither **JAG** nor any of its officers, employees or agents shall lend any monies nor have personal business dealings with a probationer under the supervision of **JAG**.

8.    **OBLIGATIONS OF THE COURT AND/OR GOVERNING AUTHORITY.**

In consideration for the services of **JAG**, the Court and/or Governing Authority shall provide the following services:

      A.    Take appropriate steps to insure that this Agreement shall be attached as an exhibit to the approval by the governing authority of **Treutlen County**, Georgia to privatize probation services.

      B.    Refer appropriate cases to **JAG** for community supervision.

      C.    Utilize pre-trial supervision program, electronic house arrest program, and other programs and services if and when appropriate.

9.    **FEES.**

Fees for the **JAG's** supervision services shall be as set forth on the Fee Schedule which is attached hereto as Exhibit A, and which is expressly incorporated herein by this reference.

10.    **PAYMENT.**

Supervision services shall be paid for by the Clients which are the subject of such Services.  Clients shall pay the cost of supervision services and the equipment associated with such services, as well as such additional amounts which the Court may instruct **JAG** to collect (such as restitution, court fines and fees).  As used herein, "Client" shall mean any person being supervised, participating in a class, wearing an electronic transmitter, or directly using any other **JAG** service or equipment, in conjunction with court ordered probation or supervision.

11.    **FINANCIAL OBLIGATION.**

This agreement does not provide for any financial obligation from the Court or the Governing Authority of **Treutlen County**, Georgia to **JAG**.

## 12.   TERM.

The term of this Agreement shall commence on MAR 14, 08 and shall continue until
MARCH 15 2009 . This Agreement, its terms and conditions, and any authorized Exhibits
and Amendments shall renew automatically for succeeding periods of one (1) year unless
otherwise terminated as provided for herein or unless written notice to the contrary is
directed to the other party at least thirty (30) days prior to the date of expiration.

## 13.   TERMINATION.

**A.**   **With Cause.**  Either party may terminate this Agreement at any time for
failure by the other party to perform or adhere to any material obligation
undertaken pursuant to this Agreement after giving the other party thirty
(30) days' prior written notice within which to cure such default. If such
default is not cured within the thirty (30) day period, the party which gave
the notice may terminate the Agreement at any time thereafter upon
written notice to the other party.

**B.**   **Bankruptcy/Insolvency.**  Either party may terminate this Agreement
immediately by written notice to the other party if the other party ceases to
trade or function in the ordinary course of business, becomes insolvent, or
becomes subject to any assignment for the benefit of creditors, winding-
up, dissolution, insolvency, bankruptcy, receivership or any similar
proceeding.

**C.**   **Possession of Records after Termination.**  In the event of termination of
this Agreement, with or without cause, **JAG** shall turn over all records and
files of Clients which **JAG** has in its possession pursuant to this
Agreement. **JAG** agrees to surrender peacefully the assigned records and
files within thirty ( 30 ) working days of the notice of termination.

**D.**   **Transfer of funds after termination.**  **JAG** shall turn over to the Clerk of
Court any monies collected or received less supervision fees validly
incurred and duly owing to **JAG** through the termination date. Any fines,
costs, fees or restitution received by **JAG** from probationers of this Court
after termination of this Agreement shall be forwarded to the Clerk of
Court, other than fees earned by **JAG.** The Court shall provide **JAG** a
receipt for all property surrendered under this provision.

14.     FORCE MAJEURE.

**JAG** shall not be liable for any delay in performance or nonperformance which is due to causes beyond **JAG's** control, including, but not limited to, war, fire, floods, sabotage, civil unrest, strikes, embargoes or other transportation delays, acts of God, acts of third parties, acts of governmental authority or any agent or commission thereof, accident, breakdown of equipment, differences with employees or similar or dissimilar causes beyond **JAG's** reasonable control.

15.     LIMITATION OF LIABILITY.

**JAG's** entire liability and the Court's exclusive remedy for damages from any cause whatsoever, and regardless of the form of action, whether in contract, warranty or tort (including negligence), shall be limited to the specific amounts received by **JAG** hereunder that are the subject matter of or are directly related to the cause of action.

16.     INSURANCE.

**JAG** shall maintain comprehensive general liability insurance, including acts, errors or omissions and contractual liability insurance, in an amount not less than $1,000,000. **JAG** shall furnish continuous proof of insurance coverage as required hereunder, as well as proof of maintaining employee bonds in an amount of $100,000 per employee.

17.     NOTICES.

Any notices or communications given or required in connection with this Agreement shall be in writing and shall be deemed to have been given when sent by U.S. regular mail, postage prepaid, to the other party at the address stated herein and directed to the attention of the person signing this Agreement, his successor, other designee or officer of the party. Notice sent by other means, including by facsimile, shall be deemed effective upon receipt. A change in the address or facsimile number of either party may be made in the same manner as for giving of any other notice. Notices shall be addressed as follows:

Judicial Alternatives of Georgia, Inc.          Treutlen co State Court
Attn:  Kenneth Kight                            Jimmy Gerway Judge
211 North Franklin St.                          Po Box 677 Soparta GA 3
Dublin, Georgia 31021                           Attn: Jimmy Gerner
Facsimile:  (478) 274-8168                      Facsimile No. (912) 829-4137.

18.   **MISCELLANEOUS.**

A.   **Time of Essence.** All time limits stated herein are of the essence of this Agreement.

B.   **Entire Agreement.** This Agreement, including all exhibits attached hereto and incorporated herein by reference, constitutes the entire agreement between the parties hereto and supersedes any and all agreements, whether written or oral, that may exist between the parties regarding the same. No representations, inducements, promises, or agreements between the parties not embodied herein shall be of any force and effect. No amendment or modification to this Agreement or any waiver of any provision hereto shall be effective unless in writing and signed by both parties.

C.   **No Assignments.** Without prior written consent from the Court, **JAG** shall not assign or transfer this Agreement.

D.   **Successors.** This agreement shall not be binding upon any successor to the undersigned Judge, unless ratified by the successor in office. If a successor attains the position of undersigned Judge, and this Agreement is not ratified by such successor, then **JAG** shall be permitted a reasonable time period, not less than ninety (90) days, in which to wind up its activities. The Court will not be deemed to have ratified the Agreement unless the Court gives written notice of ratification within thirty (30) days of taking the oath of office.

E.   **Captions.** The captions set forth herein are for convenience only and shall not define or limit any of the terms hereof.

F.   **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia, without regard to its Conflicts of law provisions. The parties herein agree that venue is agreed to be in **Treutlen County**, Georgia for any legal action arising out of this contract.

**THIS AGREEMENT SHALL NOT BE EFFECTIVE UNTIL EXECUTED BY THE COURT AND ACCEPTED BY AN AUTHORIZED REPRESENTATIVE OF**

**JUDICIAL ALTERNATIVES OF GEORGIA, INC., AND APPROVED BY THE GOVERNING AUTHORITY OF THE TREUTLEN COUNTY, GEORGIA.**

By execution hereof, the signer hereby certifies that signer is duly authorized to execute this Agreement on behalf of the Court.

**Judicial Alternatives of Georgia, Inc.**

**COURT:**

State Court of Treutlen County, Georgia

_____
Judge

_____
Kenneth Kight, Co-owner

By: _____
Treutlen County  Official]

L:\Documents\Judicial Alternatives\Form Contract.doc

Page 10

# EXHIBIT A

## FEE SCHEDULE

**The following are fees paid by the offender to Judicial Alternatives of Georgia, Inc.**

| *SERVICE* | *COST OF SERVICE* |
|---|---|
| Regular Probation Supervision | $40.00 per month, per offender |
| Intensive Supervision<br>(Requires minimum of 3 weekly contacts) | $50.00 per month, per offender |
| Pre-Trial Supervision | $40.00 per month, per offender |

| *PROGRAM SERVICES* | *COST OF SERVICE* |
|---|---|
| Drug Screens<br>(Screens for 8 controlled substances) | $20.00 per screen |
| Electronic Monitoring | $10.00 per day, per offender<br>$25.00 installation fee |
| Domestic Violence Program | $575.00   (26 weekly sessions as required by Georgia FVIP) |
| Anger Management Program | $150.00   (8 hour course) |
| "Responsible Behavior" | $150.00   (8 hour course) |

Terms for Districts 1, 3 and 4 run with Presidential Elections
Terms for Districts 2 and 4 run with Governor

<u>Commissioners in 2008</u>
District 1      Joe C. Webb (now deceased)
District 2      Gerald Hooks
District 3      Hugh Beasley
District 4      George McLendon (deceased)
District 5      William Baker

<u>Commissioners during 2011 when Keen was sentenced</u>
District 1      Joe C. Webb or Mary Ann Carvin
District 2      Hugh Brantley        (Elected in 2010)
District 3      Alvin Wheeler        (Elected in 08)
District 4      Kim Edge             (Elected in 08)
District 5      William Baker        (Elected in 2010)

<u>Current Commissioners</u>
District 1      Mary Ann Carvin
District 2      Forrest Edge
District 3      Alvin Wheeler
District 4      Kim Edge
District 5      Cashaunda Smith

**EXHIBIT**

B

IN THE STATE COURT OF TREUTLEN
STATE OF GEORGIA

Filed in Office, This _____ day of
_____ 20___ ___
_____ Clerk

THE STATE OF GEORGIA

VS. *Phillip Keen*
DEFENDANT

TERM OF COURT

| DOCKET / TICKET # | OFFENSE / CHARGE | DISP | FINE | JCSA | POST | LIBR | VICTIM | DRUG | SUB-TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| 11SC2402 | DUI | ✓ | | | | | | | 805 |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

FINE TOTAL 805

☑ **MISDEMEANOR SENTENCE**

WHEREAS, the above named defendant has been found guilty of the above stated offense(s), WHEREUPON, it is ordered and adjudged by the Court that: The said defendant

is hereby sentenced to confinement for a period of _____ 12 m _____
and by order of the court, this said sentence may be served on probation provided he/she abides by the following conditions of probation.

☐ **FIRST OFFENDER TREATMENT**

WHEREAS, the above named defendant has been found guilty of the above stated offense, and; WHEREAS, said defendant has not previously been convicted of a felony nor availed himself of the provision of the First Offender Act (GA Laws 1968, p. 324)
NOW, THEREFORE, the defendant consenting hereto, it is the judgment of the Court that no judgment of guilty be imposed at this time, but that further proceedings are

deferred and that defendant is hereby sentenced to confinement for the period of _____ and/or placed on probation for the period of _____
from this date provided that said defendant complies with the following general and special conditions herein imposed by the court as a part of this sentence.
PROVIDED, furthermore, that upon violation of the terms of probation, or upon release of the defendant by the Court prior to the termination period thereof, the defendant shall
stand discharged of said offense charged and shall be completely exonerated of guilt of said offense charged.
Let a copy of this Order be forwarded to the Identification Division of the Federal Bureau of Investigation.

☑ **GENERAL CONDITIONS OF PROBATION**

The defendant, having been granted the privilege of serving all or part of the above stated sentence on probation, is hereby sentenced to the following conditions of probation:
1. ( • ) Do not violate the laws of any governmental unit.
2. ( • ) Avoid injurious and vicious habits — especially alcoholic intoxication, narcotics, and other dangerous drugs unless lawfully prescribed.
3. ( • ) Avoid persons or places of disreputable character.
4. ( • ) Report to the Probation Supervisor as directed and permit such supervisor to visit him/her at home or elsewhere.
5. ( • ) Work faithfully at suitable employment insofar as may be possible.
6. ( • ) Do not change his/her present address, move outside the jurisdiction of the Court, or leave the State for any period of time without prior permission of the Probation Supervisor.
7. ( • ) Support his/her legal dependents to the best of his/her ability.
8. ( • ) Probationer shall, upon oral or written request by any probation officer, produce a breath, urine, and/or blood specimen for analysis for the possible presence of any substance prohibited or controlled by any law of the State of Georgia or of the United States.
9. ( • ) Pay a probation supervision fee of ( ) $40.00 per month plus $9.00 per month to the Georgia Crime Victim Fund.
10. ( ) Probation will become unsupervised upon payment of all fines, fees, and restitution and all conditions have been complied with.
11. ( ✓ ) Probationer will attend, complete, participate in, and pay for (if applicable), the following programs and/or special conditions:
   ☐ PAY WITHIN _____
   ☑ MENTAL HEALTH EVALUATION _____
   ☑ JAIL TIME _____ DAYS
   ☐ INSTALL IGNITION INTERLOCK DEVICE
   ☑ COMMUNITY SERVICE _____ 40 _____ HOURS WITHIN _____ MONTHS
   ☐ DRUG SCREENS _____ AND SUBMIT TO THE ADMISSIBILITY OF ALL DRUG SCREEN RESULTS FROM REDWOOD LABORATORIES
   ☑ SUBMIT TO RANDOM SEARCH AND SEIZURE
   ☑ ATTEND ALCOHOL/DRUG EVALUATION AND FOLLOW ALL RECOMMENDATIONS
   ☑ COMPLETE DEFENSIVE DRIVING LEVEL 1 WITHIN _____ MONTH(S)
   ☑ COMPLETE DUI SCHOOL LEVEL 1 WITHIN _____ MONTH(S)
   ☐ PROBATION MAY TERMINATE AFTER _____ MONTH(S)

   ☐ Probationer shall pay restitution in the amount of $ _____ to: _____ *Will Be given Credit for 10 Hours of*
12. ( ) Other conditions of probation: *Community*

IT IS THE FURTHER ORDER OF THE COURT, and the defendant is hereby advised that the Court may, at any time, revoke any conditions of this probation and/or
discharge the defendant from probation. The probationer shall be subject to arrest for violation of any condition of probation herein granted. If such probation is revoked, the
Court may order the execution of the sentence which was originally _____ section thereof in the manner provided by law deducting therefrom the amount of time the
defendant has served on probation.

IT IS SO ORDERED
_____ 1, 27, 12 _____
DATE

**EXHIBIT**
**C**

_____
PRESIDING JUDGE

_____ SERVICE

This is to certify that a true and correct copy of this sentence has been delivered in person to the defendant and he/she instructed regarding the conditions as set forth above.
Probationer also acknowledges a copy of conditions received and instructions regarding conditions given.

_____ 1, 27, 2012 _____        X _____ Phillip Keen Jr _____        _____ Dann Boxx _____
DATE        PROBATIONER        PROBATION OFFICER

# *JUDICIAL ALTERNATIVES OF GEORGIA, Inc.*
## PROBATION SERVICES AGREEMENT

**THIS AGREEMENT** (this "Agreement") is entered into this 21 day of June 2005 by and between **Judicial Alternatives of Georgia, Inc.,** a Georgia corporation with its principal place of business at 185A Roberson Mill Road, Milledgeville, Georgia ("herein after referred to as JAG"), and the **State Court of Baldwin County, Georgia** ("herein after referred to as the Court"), and is to be approved by the Baldwin County Commissioners and the State Court Judge of Baldwin County is effective 6/21/05 , 2005.

**WHEREAS**, the Court has determined that a present need exists for certain Probation Services, hereinafter referred to as the "Services", and

**WHEREAS**, the Court and the County are authorized by O.C.G.A.§ 42-8-100 through 108, to enter into this Agreement by the laws and regulations to which the Court is subject; and

**WHEREAS, *JAG*** is qualified and experienced in providing comprehensive professional services regarding probation supervision, fine collections, counseling, and other probation services for persons convicted of certain misdemeanors; and

**WHEREAS, *JAG*** is willing to provide such services to the Court in compliance with the legislative enactment, and in compliance with the standards and qualifications as set forth by the Probation Advisory Council; and

**WHEREAS**, the Court, the County and *JAG* agree that the terms and conditions of this Agreement apply to the Services provided hereunder; and

**NOW, THEREFORE**, in consideration of the mutual covenants herein contained, the parties agree as follows:



1.    **PURPOSE**

The purpose of this Agreement is to set forth the agreement between *JAG*, the County and the Court concerning the Supervision Services that *JAG* agrees to provide the Court hereunder.

2.    **SERVICES/TERM**

2.1    Services.   *JAG* agrees to provide the services as described herein which shall be subject to this Agreement and separately executed by the Court, the County and *JAG*.  Services provided shall be paid by Clients receiving the Services as outlined in the Fee Proposal.  Services provided by *JAG* hereunder shall be governed by this Agreement.  Capitalized terms used in this Agreement refer to the corresponding terms defined herein.

2.1. A *JAG* agrees to provide the following supervision services:

1.    Monitor and collect scheduled time payments for fines, court costs and restitution.

2.    Monitor conditions placed on convicted misdemeanants, as ordered by the court.

3.    Provide staff to attend **Baldwin County State Court** to perform intake on sentenced misdemeanants.

4.    Provide monthly reports to the Court.  All collected fine and cost payments shall be remitted on a monthly basis to the Clerk of the Court.

5.    Confer with the Court staff, the District Attorney's/Solicitor's office and Judges on cases as appropriate.

6.    Manage Client case limits and maintain a reasonable number of Clients per Probation Officer in order to provide attention to all Court ordered terms and conditions, consistent with the proposal submitted.

7.    Maintain appropriate records on Clients.

8.    Provide periodic detailed reports to the Court.

9.    Develop and monitor community service.

10.    Submit a monthly written report to the Court and the County on the amount of Court fines, costs and restitution ordered by the Court and collected by *JAG* from Clients. The report shall include the court case number, term of probation, status of case, and the total dollar amount applied to Court-ordered fines, restitution and other costs ordered by the Court, and shall be submitted by the **tenth** business day of the following month.

11.    Develop and monitor restitution recovery program.

12.    Report non-compliance by the offender to the Court.

13.    Provide oversight of any offender placed in the pre-trial supervision program.

14.    Tender all fines and costs ordered by the court and collected by *JAG* during the month from Clients to the Clerk of the Court by the **tenth** day of the following month.

15.    *JAG* shall provide the following intervention programs ("Programs") to Clients when ordered by the Court; Domestic Violence, Anger Management, Responsible Behavior, and Financial Management

In providing the Supervision Services, *JAG* shall employee professional probation personnel who are at least 21 years of age, have completed a four-year degree, or equivalent experience and a two-year degree. All *JAG* employees, regardless of job title and/or responsibilities, will have a criminal background check completed. *JAG* shall comply with all laws regarding confidentiality of Client records. *JAG* shall not profit from any fines, restitution or court costs collected from the Clients.

The above Services will be performed in accordance with the Probation Services Proposal submitted to the Court.

As used in this Agreement, the term "Client" shall mean the person actually being supervised, participating in a class, or wearing an electronic transmitter or directly receiving or using any other *JAG* service or equipment.

2.1.B.  The Court agrees to do or provide (as applicable) the following under the above referenced Agreement:

1.  Refer appropriate cases to *JAG* for community supervision.

2.  Utilize pre-trial supervision program, electronic house arrest program and other programs and services if and when appropriate.

2.2    **Term**. The term of this Agreement shall commence on __6 21 05__ and shall continue until __6 30 06__. This Agreement, its terms and conditions, and any authorized Exhibits and Amendments shall renew automatically for succeeding periods of one (1) year unless otherwise terminated as provided for herein or unless written notice to the contrary is directed to the other party within thirty (30) days prior to the date of expiration.

3.    **PRICING**

Pricing for the Supervision Services shall be as set forth on the attached Fee Schedule, which is incorporated herein by this reference. (See Exhibit A.)

4.    **PAYMENT**

4.1   Supervision Services shall be paid for by the Clients which are the subject of such Services. Clients shall pay the cost of Supervision Services and the equipment associated with such Services, as well as such additional amounts which the Court may instruct *JAG* to collect (such as restitution, court fines and fees).

4.2   Tender of Fines: All payments by probationers shall be divided equally between the Court and JAG until probation fees are paid for that month. After the monthly probation fees are paid all collections shall be remitted to the court.

5.    **LIMITATION OF LIABILITY**

5.1   Disclaimer of Warranty
*JAG* MAKES NO EXPRESS WARRANTIES REGARDING THE SERVICES OR ANY EQUIPMENT PROVIDED HEREUNDER. FURTHER, JAG EXCLUDES THE WARRANTIES OF MERCHANTABILITY AND FITNESS OF THE SUPERVISION SERVICES OR ANY EQUIPMENT PROVIDED HEREUNDER FOR A PARTICULAR PURPOSE. *JAG* EXPRESSLY DISCLAIMS ANY WARRANTY THAT ANY EQUIPMENT PROVIDED HEREUNDER IS IMPERVIOUS TO TAMPERING.

5.2   Acts
IN NO EVENT DOES *JAG* ASSUME ANY RESPONSIBILITY OR LIABILITY FOR ACTS THAT MAY BE COMMITTED BY CLIENTS, OR FOR ANY DAMAGES CAUSED BY THE COURT'S FAILURE TO FULFILL ITS RESPONSIBILITIES.

5.3   JAG's Liability
*JAG's* entire liability and the Court's exclusive remedy for damages from any cause whatsoever, and regardless of the form of action, whether in contract, warranty or tort (including negligence), shall be limited to the specific amounts received by *JAG* hereunder that are the subject matter of or are directly related to the cause of action. The foregoing limitation will not apply to *JAG's* liability under Section 7 entitled "Patent and Proprietary Right Indemnity" or to claims by third parties for personal injury or property damage arising out of the negligence of *JAG*.

6.    **PROPRIETARY INFORMATION AND TRADE SECRETS**

6.1    <u>Proprietary Information</u>.  All Proprietary Information and all Trade Secrets and all physical embodiments thereof, received or developed by *JAG* while *JAG* is performing services for or on behalf of the Court, are confidential to and are and will remain the sole and exclusive property of *JAG*.  The Customer will hold such Proprietary Information and Trade Secrets in trust and strictest confidence and will not use, reproduce, distribute, disclose or otherwise disseminate the Proprietary Information or Trade Secrets or any physical embodiments thereof and may, in no event, take any action causing or fail to take the action necessary in order to prevent, any Proprietary Information and any Trade Secret to lose its character or cease to qualify as Proprietary Information or as Trade Secrets.

6.2    <u>Definition of Proprietary Information.</u>  "Proprietary Information" means information related to *JAG* (1) which derives economic value, actual or other persons who can obtain economic value from its disclosure or use; (2) which is not generally known by *JAG* competitors; and (3) which is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.    Proprietary Information may include, but is not limited to, information concerning (a) the business operations or internal structure of *JAG*, (b) the customers or clients of *JAG*, past, present or future research done by *JAG* respecting the business or operations of *JAG* or customers or clients or potential customers or clients of *JAG*, (d) work performed by *JAG*, for any customer or client of *JAG*, or (e) any method or procedure relating or pertaining to projects developed by *JAG*, or contemplated by *JAG* to be developed.

6.3    <u>Definition of Trade Secrets</u> .  "Trade Secrets" shall include the whole or any portion of any scientific or technical and non-technical data related to the formulas, patterns, designs, compilations, programs, methods, techniques, drawings, processes, finances, actual or potential customers and suppliers, existing and future products and services, and employees of JAG.  Trade secrets also include information which has been disclosed to JAG by a third party and which JAG is obligated to treat as confidential.

7.   **INDEMNIFICATIONS**

7.1   <u>General</u>

JAG will indemnify the Court from and against all liability resulting from the negligence or willful misconduct of JAG, its employees and agents in the provision of Services hereunder.  The Court will indemnify *JAG* from and against all liability resulting from the negligence or willful misconduct of the Court, its employees and agents in the operation and use of the Services.

7.2   <u>Liability</u>

The term "liability" includes but is not limited to legal fees and expenses, penalties and interest.


8.   **TERMINATION**

8.0   <u>With Out Cause</u>

Either party may terminate this agreement at any time for no cause shown pursuant to this agreement by giving the other party 60 days prior written notice to the date of termination. The notice shall be given prior to the first day of the month in which the 60 days notice is to take effect.

8.1   <u>With Cause</u>

Either party may terminate this Agreement at any time for failure by the other party to perform or adhere to any material obligation undertaken pursuant to this Agreement after giving the other party thirty (30) days' prior written notice within which to cure such default.  If such default is not cured within the thirty (30) day period, the party which gave the notice may terminate the Agreement at any time thereafter upon written notice to the other party.


8.2   <u>Bankruptcy</u>

Either party may terminate this Agreement immediately by written notice to the other party if the other party ceases to trade or function in the ordinary course of business, becomes insolvent, or becomes subject to any assignment for the benefit of creditors, winding-up, dissolution, insolvency, bankruptcy, receivership or any similar proceeding.

8.3    Effect of Termination

The termination of this Agreement will not relieve either party of any obligation or liability accrued under this Agreement or pursuant to any order issued prior to the termination, and will not relieve either party of the continuing obligation pursuant to the Section regarding Indemnification (Section 7), which obligations will survive any termination of this Agreement.

8.4    Possession of Records after Termination

In the event of termination of this Agreement, with or without cause, JAG shall turn over all records and files of Clients which JAG has in its possession pursuant to this Agreement. JAG agrees to surrender peacefully the assigned records and files to the City and Court.

## 9.    FORCE MAJEURE

JAG shall not be liable for any delay in performance or nonperformance which is due to causes beyond JAG's control, including, but not limited to, war, fire, floods, sabotage, civil unrest, strikes, embargoes or other transportation delays, acts of God, acts of third parties, acts of governmental authority or any agent or commission thereof, accident, breakdown of equipment, differences with employees or similar or dissimilar causes beyond JAG's reasonable control.

## 10.    INSURANCE

JAG shall maintain comprehensive general liability insurance, including acts, errors or omissions and contractual liability insurance, in an amount not less than $1,000,000. JAG shall furnish continuous proof of insurance coverage as required hereunder, as well as proof of maintaining employee bonds in an amount of $100,000 per employee.

## 11.    NOTICES

Any notices or communications given or required in connection with this Agreement shall be in writing and shall be deemed to have been given when sent by U.S. regular mail, postage prepaid, to the other party at the address stated herein and directed to the attention of the person signing this Agreement, his successor, other designee or officer of the party. Notice sent by other means, including by facsimile, shall be deemed effective upon receipt. The current facsimile number for JAG is (478)274-8168; the current facsimile number for the Court is (478) 864-0528. A change in the address or facsimile number of either party may be made in the same manner as for giving of any other notice.

Notices to *JAG* shall be addressed as follows:

Judicial Alternatives of Georgia, Inc.
Attn:  Kenneth Kight
211 N. Franklin St.
Dublin, Georgia  31021

Notices to the **Court** shall be addressed as follows

**Baldwin County State Court**

_____
_____
**Phone# (478)** _____
**Fax# (478)** _____

12.   **GENERAL**

12.1   <u>No Assignments</u>

Without the prior written consent from the Court, *JAG* shall not assign or transfer this Agreement.

12.2   <u>Entire Agreement</u>

The entire agreement between the parties with respect to the subject matter hereof is contained in this Agreement.   This Agreement supersedes all prior oral and written proposals and communications related to this Agreement between the parties. The Court acknowledges that it has not been induced to enter into this Agreement by any representations or statements, oral or written, not contained in this Agreement.   No provision of this Agreement shall be deemed waived, amended or modified by either party unless such waiver, amendment or modification is in writing and signed by the party against whom the waiver, amendment or modification is claimed.   Preprinted terms and conditions of any purchase order or other instrument issued by the Court in connection with this Agreement which are in addition to or inconsistent with the terms and conditions of this Agreement will not be binding on *JAG* and will not apply to this Agreement.   This Agreement shall be binding upon and inure to the benefit of the parties hereto, their permitted successors and assigns.

### 12.3   Severability

Any provision of this Agreement which is unenforceable under the laws of any jurisdiction which are applicable hereto shall be ineffective to the extent such laws apply without causing such provision to be ineffective under the laws of any other jurisdiction which may be or may become applicable and without invalidating the remaining provisions of the Agreement.

### 12.4   Captions

The captions set forth herein are for convenience only and shall not define or limit any of the terms hereof.

### 12.5   Governing Law

This Agreement shall be governed by and construed in accordance with the laws of the **State of Georgia**, without regard to its conflicts of law provisions.

### 12.6   Arbitration

All disputes and claims relating to any provision hereof or arising out of the parties' relationship or creation or termination thereof (including, without implied limitation, any claim that any provision of this agreement, any specification, standard or procedure or any other obligation of JAG or the County is illegal or otherwise enforceable or voidable under any law, ordinance or ruling) shall be presented to the Judge of the State Court of Baldwin County. If either party disagrees with the decisions of the Judge of the State Court of Baldwin County such party shall have the right to litigate the matter in its entirety in the Superior Court. The party wishing to submit any matter to the Judge of the Magistrate Court of Baldwin County shall do so by written notice to the other party and to the Judge of the Magistrate Court of Baldwin County, which notice shall specify the nature of the controversy, claim or dispute. The Judge of the Magistrate Court of Baldwin County shall schedule a hearing within fifteen (15) days from such notice, at which time both parties shall present their positions. The Judge of the Magistrate Court of Baldwin County shall render a decision within seven (7) days after the date of the hearing. In the event the Judge is the complaining party, the County of Baldwin shall be asked to resolve the issues presented. In the event that either party disagrees with the county, both parties shall present their positions to the Superior Court.

12.7   Access to Books and Records

Upon five (5) business days written notice to *JAG*, representatives of the Court shall have access, at all reasonable times, to all *JAG's* books, records, correspondence, instructions, receipts, vouchers and memoranda (excluding computer software) pertaining to work under this Agreement for the purpose of conducting a complete independent fiscal audit for any fiscal year or calendar year within the last two (2) years.

12.8   Financial Obligation

**This agreement does not provide for any financial obligation from the Court to *JAG*.**

12.9   Time of the Essence

All time limits stated herein are of the essence of this Agreement.

**THIS AGREEMENT SHALL NOT BE EFFECTIVE UNTIL EXECUTED BY THE COURT AND ACCEPTED BY AN AUTHORIZED REPRESENTATIVE OF JUDICIAL ALTERNATIVES OF GA, INC.**

By execution hereof, the signer hereby certifies that signer is duly authorized to execute this Agreement on behalf of Customer.

**Judicial Alternatives of Georgia**                         CUSTOMER:

JAG, Inc.                                        **Baldwin County State Court**

_____          _____
Kenneth Kight, Owner                              Judge, State Court Of Baldwin County


                                          _____
                                          Chairman, Baldwin County Commissioners

# FEE PROPOSAL

**The following are fees paid by the offender to Judicial Alternatives of Georgia, Inc.**

| _SERVICE_ | _COST OF SERVICE_ |
|---|---|
| Regular Probation Supervision | $35.00 per month, per offender |
| Intensive Supervision<br>(Requires minimum of 3 weekly contacts) | $50.00 per month, per offender |
| Pre-Trial Supervision | $35.00 per month, per offender |

The above fees include all services outlined in the Scope of Services directory with the exception of the following:

| _PROGRAM SERVICES_ | _COST OF SERVICE_ |
|---|---|
| Drug Screens<br>(Screens for 8 controlled substances) | $15.00 per screen |
| Electronic Monitoring | $8.00 per day, per offender<br>$25.00 installation fee |
| Domestic Violence Program | $460.00 per offender |
| Anger Management Program | $150.00  (See attached menu) |
| "Responsible Behavior" | $135.00  (See attached menu) |
| Financial Management | $70.00   (See attached menu) |
| Parenting Program | $120.00 (Available if requested) |
| "Job Preparedness" Course | $90.00  (Available if requested) |