ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2015 AUG 21  AM 9: 39

CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

PHILIP KEEN, JR., and all other  *
persons similarly situated,     *
     *
    Plaintiff,     *
     *
    v.        *   CIVIL ACTION NO.
     *   CV 315-030
JUDICIAL ALTERNATIVES OF   *
GEORGIA, INC.     *
     *
    Defendant.     *

---

O R D E R

---

In recent years a number of traditional or typical functions of state and federal government have been "outsourced," "privatized," or contracted out to the private sector. For example, many state and federal prisons are now operated under contract. In 2000, the Georgia Legislature removed jurisdiction over misdemeanor probation services from the Georgia Department of Corrections (see 2000 Ga. Laws 926 (S.B. 474), codified at O.C.G.A. § 17-10-3(f)), leaving local counties and municipalities with the choice of creating a local public probation system at their own expense or contracting with a private probation service company to provide probation supervision services at the expense of the probationers. The legislation effectively caused the proliferation of private probation service companies

throughout the State. Contracts with private probation *service companies* are governed by state law, "Agreements for Probation Services," codified at O.C.G.A. §§ 42-8-100 through 108 (hereinafter referred to as "the Statute").

Many people disagree with the concept that governmental functions so close to the administration of justice should be relegated to a profit motivated business enterprise. Obviously, a majority of the Legislature in 2000 thought otherwise.

This federal district court and a number of superior courts in Georgia have been witness to many challenges to the concept and the details of the privatization of the administration and supervision of individuals on probation from misdemeanor convictions. Whether there is "Big Money" in the business of probation is unknown to the presiding judge. What is known is that a number of firms compete for this business opportunity. Whether the state and county governments have saved significant money by privatization is also unknown. However, it is known that many abuses are alleged as a result of the system. Further, it should be noted that the Legislature was careful and specific in limiting private probation services to misdemeanor cases. See O.C.G.A. § 42-8-100(g)(1).

Finally, it is clear that the appellate courts particularly are disinclined to embark upon a course which would upset the legislative preference for privatizing misdemeanor probation services. Appellate opinions have scrupulously parsed the elements of each of the plaintiffs' claims, their standing as litigants and their purposes in bringing the action before wading into the deeper pool in which the ultimate question of the validity of the statute is immersed.

This case is yet another which must be decided on the basis of peripheral but important issues instead of the main thrust against the privatization of a governmental function which allegedly impinges upon the judicial prerogative of elected judges and which supplants the discretion of trained and sworn state officials.

## I.  BACKGROUND

The Statute provides as follows:

The chief judge of any court within the county, with the approval of the governing authority of that county, is authorized to enter into written contracts with corporations, enterprises, or agencies to provide probation supervision, counseling, collection services for all moneys to be paid by a defendant according to the terms of the sentence imposed on the defendant as well as any moneys which by operation of law are to be paid by the defendant in consequence of the conviction, and other probation services for persons convicted

> in that court and placed on probation in the county. In no case shall a private probation corporation or enterprise be charged with the responsibility of supervising a felony sentence.

O.C.G.A. § 42-8-100(g)(1). Pursuant to this provision, on March 16, 2008, the Chief Judge of Treutlen County State Court entered into an Agreement with Defendant Judicial Alternatives of Georgia, *Inc.* ("JAG"), a private company, to provide probation services to probationers referred by the state court. (Compl. ¶¶ 7-8 & Ex. A.) The Agreement was approved by the Treutlen County Commissioners. Attached to the Agreement is a Fee Schedule, which provides for a payment of $40.00 per month, per offender for regular (as opposed to "intensive") probation supervision. (Compl., Ex. A.)

The Agreement had a one-year term. (<u>Id.</u> at 7.) The Agreement further provided that its terms and conditions "shall renew automatically for succeeding periods of one (1) year unless otherwise terminated as provided for herein or unless written notice to the contrary is directed to the other party at least thirty (30) days prior to the date of expiration." (<u>Id.</u>) The members of the Treutlen County Commission changed in 2009 as new commissioners took office. (Compl. ¶ 8.) This newly comprised County Commission did not approve any subsequent contract between the State Court of

4

Treutlen County and JAG in 2009 or any year thereafter.[1] (Id. ¶ 10.)

In January 2012, the State Court of Treutlen County placed Plaintiff Philip Keen, Jr., on probation from his twelve-month misdemeanor sentence upon his conviction for driving under the influence. (Id. ¶¶ 15-16 & Ex. C.) Pursuant to the terms of his probation, Plaintiff paid JAG the sum of $1,395.00 in payment of fines, surcharges and probation fees. (Id. ¶ 16.) Plaintiff claims that a portion of the $1,395.00 paid to JAG consisted of more than one and as many as eight monthly probation fees of $40. (Id. ¶ 17.) In fact, his judgment of conviction expressly states that he must pay a $40 per month probation supervision fee. (Id., Ex. C.) Plaintiff paid all assessed fees and costs and served his probationary period.

Nearly two years following termination of his probation, Plaintiff filed the instant purported class action, seeking a declaratory judgment that the Statute, O.C.G.A. §§ 42-8-100 through 108, as written and applied, is unconstitutional. (Id., Count I.) Plaintiff also seeks to recover the fees paid to JAG under the state law claim of money had and received. (Id., Count II.) Presently, Defendant JAG has filed a motion

---

[1] There are no allegations that the Treutlen County Commission disapproved or sought to amend the contractual relationship between the State Court of Treutlen County and JAG.

to dismiss the complaint upon several grounds. The Court heard oral argument on the motion on July 27, 2015. Upon consideration of the pleadings, the relevant law, and the arguments of counsel in brief and at oral argument, the motion to dismiss the complaint is **GRANTED** for the reasons stated herein.

## II.  LEGAL ANALYSIS

Plaintiff asserts two causes of action on behalf of himself and a purported class. For the first cause of action, Plaintiff seeks a declaratory judgment that the Statute is unconstitutional, *inter alia*, as written and as applied, under the Fifth and Fourteenth Amendments to the United States Constitution and, as applied, under the Due Process Clause of the Georgia Constitution. For the second cause of action, Plaintiff asserts a state law claim for money had and received, whereby Plaintiff alleges that the probation supervision fees were paid to JAG unlawfully or under a void contract. Under this second cause of action, Plaintiff seeks to recover all probation supervision fees paid to JAG. In its motion to dismiss, JAG sets forth several grounds for dismissal.

### A.  Declaratory Judgment Claim

Plaintiff's declaratory judgment claim seeks the following declarations: (1) that the Statute, as written and

as applied, offends the due process clauses of the Fifth and Fourteenth Amendments of the United States Constitution (Compl. ¶¶ 49-50); (2) that the Statute, as applied, offends the due process clause and the prohibition of imprisonment for debt of the Georgia Constitution (id. ¶ 51); (3) that the establishment of a fee schedule for private probation services is a legislative act and thus, the imposition of such fees violates the separation of powers doctrine drawn from the Georgia Constitution (id. ¶ 52); (4) that private probation service contracts that have not been re-approved by a current county governing authority are void (id. ¶ 53); and (5) that JAG lacked lawful authority to collect probation supervision fees (id. ¶ 54).

JAG moves to dismiss the declaratory judgment claims on several grounds including lack of standing, mootness, and *res judicata*. JAG also moves to dismiss for failure to state a claim because the Statute is constitutional and the JAG Agreement is valid.

First, the Court readily disposes of Plaintiff's federal constitutional claims based upon a lack of standing. "A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises." Amnesty Int'l, USA v. Battle, 559 F.3d 1170, 1176-77 (11th Cir. 2009) (citing Johansen v. Combustion Eng'g, Inc., 170 F.3d 1320,

1328 n.4 (11th Cir. 1999). Federal courts are limited under Article III of the United States Constitution to adjudicating actual "cases" and "controversies." U.S. Const. art. III, § 2, cl.1. The doctrine of "standing" is grounded in the case-or-controversy requirement. <u>Ga. State Conference of NAACP Branches v. Cox</u>, 183 F.3d 1259, 1262 (11th Cir. 1999).

"It is well settled that at the time a plaintiff brings suit he must have standing to prosecute his claim; he must have a 'personal stake' in the outcome of the litigation." <u>Tucker v. Phyfer</u>, 819 F.2d 1030, 1033 (11th Cir. 1987). As the party invoking federal jurisdiction, Plaintiff bears the burden of establishing standing. <u>See</u> <u>Bischoff v. Osceola Cnty., Fla.</u>, 222 F.3d 874, 878 (11th Cir. 2000) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992)). There are two types of challenges to standing: facial attacks and factual attacks. <u>Garcia v. Copenhaver, Bell & Assocs., M.D.'s PA</u>, 104 F.3d 1256, 1261 (11th Cir. 1997). A facial attack is based on the contents of the complaint and requires the Court to assume all allegations therein are true. <u>Id.</u> A factual attack challenges subject matter jurisdiction in fact, irrespective of the pleadings. In resolving a factual attack, matters outside the pleadings, such as testimony and affidavits, may be considered. <u>Id.</u> (quoting <u>Lawrence v. Dunbar</u>, 919 F.2d 1525, 1529 (11th Cir. 1990)). Here, Defendant

8

JAG challenges Plaintiff's standing based on the allegations in the Complaint, and thus, it is a facial attack.

The Court need not tarry long on the matter of standing since the Eleventh Circuit has held in a similar case that a plaintiff challenging the constitutionality of the Statute, O.C.G.A. §§ 42-8-100 through 108, lacks standing because he could not show that there was a sufficient likelihood that he would once again be convicted in state court, placed on probation, and made to pay a probation supervision fee. See McGee v. Solicitor General of Richmond Cnty., Ga., 727 F.3d 1322, 1325 (11th Cir. 2013).

In McGee, the plaintiff, Hills McGee, had been placed on probation with a private probation service company, Sentinel Offender Services, LLC, upon his misdemeanor conviction for public drunkenness and obstruction. Id. at 1323. McGee was ordered to serve two twelve-month consecutive sentences on probation, pay a fine, and to pay a monthly supervision fee to Sentinel. Id. When McGee stopped reporting to Sentinel and paying his monthly fee, he faced a probation revocation hearing.[2] Id. at 1324. At the hearing, McGee's original sentence was vacated and he was ordered held in custody for two months or until he paid the balance of his probation fee, $186. Id.

---

[2] Prior thereto, McGee's fine had been converted to community service hours. McGee, 727 F.3d at 1324.

McGee immediately filed a writ of habeas corpus in state court challenging his mental competency to waive his right to counsel. He named the Sheriff, the Solicitor General and Sentinel Offender Services. McGee also challenged the constitutionality of the Statute. Id. Five days later, the state court held a hearing at which time it granted the writ upon finding McGee to be mentally incompetent. It reserved ruling on the constitutional claims. Id. at 1324-25.

The case was then removed to this Court, which granted summary judgment for the defendants, the Solicitor General and Sentinel.[3] McGee v. Evans, 2011 WL 10067984 (S.D. Ga. Aug. 26, 2011) (Hall, J.). The district court determined that the constitutional claims were moot, citing McGee's successful habeas petition and subsequent release. Id. at *4.

On appeal, the Eleventh Circuit found the district court's consideration of mootness to be erroneous. McGee, 727 F.3d at 1325. It pointed out that while McGee's dispute with the Sheriff had come to an end upon the state court's issuance of a writ of habeas corpus, McGee's suit for declaratory judgment against Sentinel and the Solicitor General, however, "presented a live controversy." Id.

---

[3] The Sheriff had been dismissed from the case after the writ of habeas corpus was granted. McGee, 2011 WL 10067984, at *2 n.8.

The Eleventh Circuit then held that the district court should have determined the case based upon standing. The Eleventh Circuit found that in order to have standing to challenge the Statute, McGee would have to show that he had "'a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future.'" Id. (quoted source omitted). Because McGee could not demonstrate a sufficient likelihood that he again would be convicted and placed on probation, the Eleventh Circuit held that he lacked standing.[4] Id. The Eleventh Circuit then remanded the case with the mandate that the district court remand the case to state court for lack of subject matter jurisdiction. Id. at 1326.

The clear holding in McGee is that a plaintiff lacks standing to challenge the constitutionality of the Statute unless he can show that there is a substantial likelihood that he will be convicted and placed on probation in the future. Here, Plaintiff has not alleged any facts sufficient to make such showing. Therefore, Plaintiff's declaratory judgment claim respecting the constitutionality of the Statute under

---

[4] In one of the briefs, counsel states that the Mcgee court "ruled that the federal courts lacked jurisdiction over the habeas matter and any reference to lack of standing was pure dicta." (Doc. No. 41, ¶ 2.) I am unable to accept that characterization. The McGee court expressly held that McGee lacked standing to challenge the constitutionality of the Statute, and for this reason, it mandated remand of the case to the state court. For an example of "pure dicta," see pages one through three supra.

the United States Constitution must be dismissed for a lack of standing.

The remaining declaratory judgment allegations must be dismissed for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). 1In considering a motion to dismiss under Rule 12(b)(6), the court tests the legal sufficiency of the complaint, not whether the plaintiff will ultimately prevail on the merits. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The court must accept as true all facts alleged in the complaint and construe all reasonable inferences in the light most favorable to the plaintiff. See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002). The court, however, need not accept the complaint's legal conclusions as true, only its well-pled facts. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

A complaint also must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plaintiff is required to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." Id. To survive such motion, a plaintiff's complaint must include enough "factual allegations to raise a right to relief above the speculative level," and those facts must "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

Addressing now the constitutionality of the Statute under the Georgia Constitution, the Court notes that the Georgia Supreme Court has expressly rejected the notion that the mere act of privatizing probation services violates the Georgia Constitution. See Sentinel Offender Servs., LLC v. Glover, 766 S.E.2d 456, 466-67 (Ga. 2014). In addressing the plaintiffs' due process concerns in Glover, the Georgia Supreme Court held that "[n]othing on the face of the statute allows Sentinel or any other private probation company to deprive an individual of his or her property or liberty without due process of law nor is there anything which authorizes the creation of a private probation system that is so fundamentally unfair that it fails to comport with our notions of due process." Id. at 467. The court pointed out that the discretion to sentence a defendant to probation and to determine the conditions of probation still remains with the sentencing court. Id. Further, the sentencing court continues to bear the responsibility for determining whether a probationer is indigent and to consider alternative measures to punishment other than imprisonment for failure to pay a

13

debt. <u>Id.</u> Thus, Plaintiff's protestations of violations of due process in the instant case fail to state a claim as announced in <u>Glover</u> by the state's highest court. <u>See</u> <u>City of Chicago v. Morales</u>, 527 U.S. 41, 61 (1999) (federal courts have no authority to construe the language of a state statute more narrowly than the construction given by that state's highest court).

The <u>Glover</u> court did not address the plaintiffs' as applied challenges, which involved conduct of the private probation company that failed to comport with the statutory authority of the Statute. <u>Glover</u>, 766 S.E.2d at 467-68. For instance, the <u>Glover</u> plaintiffs alleged that Sentinel illegally collected or sought to collect excessive supervision fees or imposed conditions on their probation that were not part of their court-ordered sentences. <u>Id.</u> at 462. In the case at bar, Plaintiff fails to assert a comparable as-applied challenge. He sets forth no allegations that JAG at any time acted outside its statutory or contractual authority nor has he made a constitutional attack on the Statute "as applied" to him, his conduct, or his liberty interests. Rather, Plaintiff's so-called "as-applied" challenges complain of "the mere act of privatizing" and set forth due process allegations that the Georgia Supreme Court has rejected. Accordingly, Plaintiff's declaratory judgment claim respecting the

constitutionality of the Statute under the Georgia Constitution fails to state a claim and must be dismissed.

Finally, Plaintiff's separation of powers allegation fails to state a claim because the imposition of probation supervision fees pursuant to contract constitutes a civil fee for services, not a criminal punishment. Owens v. Sebelius, 357 F. Supp. 2d 1281, 1287 (D. Kan. 2005) ($25 monthly supervision fee for parolees are not punitive in nature because it is modest and indigent offenders may be exempted); Glaspie v. Little, 564 N.W.2d 651, 654 (N.D. 1997) ($30.00 monthly fee to defray cost of supervision is civil fee for services); Pennsylvania v. Nicely, 638 A.2d 213 (Pa. 1994) (separation of powers doctrine is not violated by statute requiring probationers to pay monthly fee for administrative expenses of offender supervision programs). Accordingly, Plaintiff's declaratory judgment claim in this regard must be dismissed.[5]

### B. Money Had and Received Claim

Plaintiff contends that the Georgia Supreme Court has explicitly recognized a cause of action for money had and

---

[5] The remaining declaratory judgment claims pertaining to the validity of the JAG Agreement will necessarily be addressed in consideration of Plaintiff's money had and received claim in the next section.

received under similar circumstances in Glover.[6]  A closer
look at that case is warranted.

The Glover case originated out of the consolidation of 13
individual cases filed in Richmond and Columbia Counties by
probation misdemeanants who had been under the supervision of
Sentinel, a private probation company.  Glover, 766 S.E.2d at
460. The plaintiffs challenged the constitutionality of the
Statute under the due process clause of the Georgia
Constitution.  The plaintiffs also sought to recover their
probation supervision fees under the money had and received
theory.  Id.  In formulating this ruling, the Georgia Supreme
Court was careful to note that what the plaintiffs sought was
not contractually authorized probation supervision fees but
"probation supervision fees which [Sentinel] unlawfully
collected from misdemeanor probationers **in contravention of**
the dictates of the private probation statutory framework
approved by the Georgia legislature."  Id. at 471 (emphasis
added).  In particular, the court found that Sentinel was
unjustly enriched when Sentinel collected probation
supervision fees in excess of those authorized by the
sentencing court or fees that were authorized by the
sentencing court unlawfully.  Id. at 470.  On this last point,

---

[6] Sentinel Offender Servs., LLC v. Glover, 766 S.E.2d 456 (Ga.
2014) (Thompson, C.J.).

16

the undisputed facts in <u>Glover</u> showed that Columbia County's Board of Commissioners *never* authorized the contract between the Chief Judge and Sentinel, in violation of O.C.G.A. § 42-8-100(g); accordingly, Sentinel's contract with Columbia County was invalid. <u>Id.</u> at 471. Thus, the Georgia Supreme Court held that the Columbia County plaintiffs could sustain a claim for money had and received under an invalid contract. The Richmond County plaintiffs, on the other hand, did not challenge the execution or validity of the private probation service contract with Sentinel. Rather, the plaintiffs sought recovery of any probation fees they paid after the expiration of the term of their original sentence. <u>Id.</u> at 472. For this claim, the Georgia Supreme Court stated that the plaintiffs have a potential cause of action under a theory of money had and received. <u>Id.</u>

In short, the <u>Glover</u> court only recognized a cause of action for money had and received to the extent a plaintiff alleged that the private probation company collected supervision fees *in contravention of* the Statute. In the case at bar, Plaintiff alleges that Defendant JAG collected fees from him "unlawfully and without [a] valid contract[]." (Compl. ¶¶ 57-58.) Plaintiff attacks the validity of the JAG Agreement with Treutlen County, not on the basis that the Treutlen County Commission *never* signed the contract, but on

the basis that it did not re-approve the JAG Agreement following the initial one-year term.[7]  The issue before the Court then is whether the JAG Agreement is a valid contract.

There is no dispute or allegation that the JAG Agreement was not properly executed and in accordance with the terms of the Statute when it was signed in March 2008.  The JAG Agreement provided for an initial one-year term with an automatic renewal provision from year to year.  (Compl., Ex. A, ¶ 12.)  The Statute provides that private probation service contracts may be terminated by the chief judge that entered into the contract, subject to the approval of the county's governing authority, and "in accordance with the agreed upon, written provisions of such contract."  O.C.G.A. § 42-8-100(g)(1).  The JAG Agreement states that either party (the chief judge or JAG) may terminate the Agreement at any time upon thirty days written notice and an opportunity to cure any material breach.  (Compl., Ex. A, ¶ 13.)  Here, there is no dispute or allegation that the chief judge of Treutlen County or JAG attempted to terminate the JAG Agreement.  Indeed, there is also no allegation or argument that the Treutlen County Commission sought the termination of the JAG Agreement.

---

[7] Critically, there are no allegations in the Complaint that JAG collected probations supervision fees in any manner other than what is provided for by contract and only upon authorization of the sentencing court.

Thus, the State Court of Treutlen County and the county's governing authority consensually operated under the JAG Agreement from year to year under the automatic renewal provision and at all times relevant to this lawsuit.

Yet, contrary to the manifest intent of the parties, Plaintiff in this case argues that the JAG Agreement was invalid because the Treutlen County Commission did not approve the Agreement after new commissioners took office. In support of this contention, Plaintiff points to O.C.G.A. § 36-30-3, which provides that "[o]ne council may not, by an ordinance, bind itself or its successors so as to prevent free legislation in matters of municipal government."[8] Plaintiff contends that neither the 2009 Treutlen County Commission nor any subsequent Commission could be bound by the Commission's approval of the JAG Agreement in March 2008.

This argument is unavailing for several reasons. First, Treutlen County is not a party to the JAG Agreement. The Agreement, though approved by the Treutlen County Commission, is between the Treutlen County State Court and JAG. Thus, O.C.G.A. § 36-30-3 does not come into play. Second, as pointed out above, the application of § 36-30-3 would give the County termination rights contrary to the terms of the JAG

---

[8] Georgia courts have held that this statute applies to counties as well as municipalities and to contracts as well as ordinances. See Madden v. Bellew, 397 S.E.2d 687 (Ga. 1990).

Agreement. Third, even assuming that § 36-30-3 applies, there are certain exceptions to its application relevant here. For instance, § 36-30-3 does not apply when the contract has been entered into with a local government by virtue of express legislative authority to do so. Chatham Cnty. Comm'rs v. Seaboard Coast Line R.R. Co., 314 S.E.2d 449 (Ga. App. 1984); see also City of Athens v. McGahee, 341 S.E.2d 855 (Ga. App. 1986). Here, the Statute expressly authorized the JAG Agreement. Also, § 36-30-3 may not apply for contracts that do not create a debt or financial obligation of the County. See Bd. of Comm'rs of Chatham Cnty. v. Chatham Advertisers, 371 S.E.2d 850 (Ga. 1988); Brown v. City of East Point, 268 S.E.2d 912 (Ga. 1980). The JAG Agreement does not create a debt for Treutlen County.

Upon the foregoing, Plaintiff's claim that the JAG Agreement is void or unlawful is without merit. Consequently, the Court determines that Plaintiff has failed to state a claim upon which relief may be granted for the recovery of probation supervision fees because Georgia courts have not recognized a cause of action for money had and received where the fees are imposed and collected under a valid, statutorily authorized contract. Plaintiff's second cause of action for money had and received must be dismissed.

## III. CONCLUSION

For the reasons stated herein, Defendant's motion to dismiss (doc. no. 18) is **GRANTED**. The Clerk is directed to **ENTER JUDGMENT** in favor of Defendant, **TERMINATE** all pending motions and deadlines, and **CLOSE** the case. Costs are taxed against Plaintiff.

**ORDER ENTERED** at Augusta, Georgia, this 21st day of August, 2015.

_____
UNITED STATES DISTRICT JUDGE